UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM G. CLARK,

    Plaintiff,

V.                                    CASE NO. 3:00CV711(RNC)

LUMBERMENS MUTUAL CASUALTY
COMPANY,

    Defendant.

RULING AND ORDER

William G. Clark brings this action against Lumbermens Mutual Casualty Company ("LMC") claiming that LMC owes him substantial sums of money under various provisions of an employment agreement. Cross-motions for partial summary judgment have been filed. For reasons set forth below, both motions are granted in part and denied in part.

Facts

LMC is in the insurance business. It had a subsidiary, Kemper Re, that was facing financial difficulties. LMC hoped to sell Kemper Re to another company, which it had tried to do before without success, or take it public through an IPO, a process that could take up to five years. On the advice of its investment banker, LMC decided to hire a new executive team for Kemper Re in order to improve its performance and attractiveness to investors.

LMC solicited Clark, an experienced executive in the insurance industry, to become Kemper Re's CEO. An employment

contract was negotiated. LMC agreed to pay Clark an annual salary of $600,000 plus a bonus. The contract provided that if Clark terminated his employment for "good reason," and there had been no IPO, he would receive one year's salary plus a bonus (totaling $990,000). Agreement § 12(b)(2). In addition, he would be deemed to have been granted an option on 5% of the equity in Kemper Re, for which he would receive a lump sum cash payment of either $6 million or an amount produced by an agreed upon formula, whichever was greater. Agreement § 4(d).[1] The parties agreed that "[s]uch amounts shall be considered as liquidated damages or severance, and not as a penalty or other punitive payment." Agreement § 12(d). They also agreed that a sale of Kemper Re to a different company would give Clark "good reason" to quit unless LMC or the purchasing company offered him a comparable compensation package.

At the same time LMC was negotiating with Clark, it was also trying to sell Kemper Re to GE Global Insurance Holding Company ("GE"). LMC and GE reached an agreement providing for GE's purchase of Kemper Re before LMC signed Clark's employment contract. LMC decided to sign the Clark contract anyway because of concerns that the deal with GE could fall through. Soon after Clark's contract was signed, LMC announced its agreement with GE. The sale of Kemper Re was completed within four months. Because of the pending sale, Clark did no work for Kemper Re.

---

[1] The formula was designed to track the value of Clark's interest in a potential IPO.

2

LMC and GE both declined to offer Clark an employment contract comparable to the one he already had so he prepared to exercise his "good reason" option to terminate the contract. LMC's executives then approached him and asked him to become the CEO of a smaller reinsurance subsidiary, Equus Re. Clark accepted and the parties agreed to extend his time to terminate his contract for "good reason" by four months. When the four months was up, Clark exercised his "good reason" option and terminated his contract.

Soon after the termination, LMC sent Clark a check in the amount of $6.99 million, purportedly in full payment of the amount owed to him under the contract. Clark's attorney contacted LMC and was told that $6 million was greater than the amount yielded by the formula contained in the contract. Believing that the amount yielded by the formula was much greater than $6 million, Clark returned the check.[2] He then brought this suit.

LMC has filed a third counterclaim alleging that while Clark was at Equus Re, he caused it to write premiums in excess of a $75 million cap, and that LMC has been injured as a result.

---

[2] LMC contends that evidence concerning its attempted payment of $6.99 million is inadmissible under Federal Rule of Evidence 408 on the ground that the check constituted an offer to settle a dispute. Clark correctly argues that, on the record before me, the check is admissible because it was sent to him, purportedly in fulfillment of LMC's contractual obligations, before there was a dispute.

3

Discussion

Clark's Claim

Clark asks for a determination that he has a contractual right to be paid a lump sum of at least $6.99 million. LMC argues that to the extent the lump sum provisions of the contract can be interpreted to entitle Clark to $6.99 million, or some greater amount, they are unenforceable as a penalty. Though many people in Clark's position might be content to accept $6.99 million, I am persuaded that LMC is contractually bound to pay him at least that much "as liquidated damages or severance, and not as a penalty or other punitive payment," just as the contract says.

As Clark properly points out, LMC's memorandum in support of its motion for summary judgment describes the payment it sent him as a "severance." I fail to see why it should not be thought of that way. Before LMC signed Clark's contract, it knew as a result of its agreement with GE that unless it or GE offered him a comparable contract in the future, it would have to pay him a "severance" of at least $6.99 million. It chose to sign. Having thus incurred, knowingly and voluntarily, a clear legal obligation, LMC, a sophisticated party, cannot escape its obligation by the simple expedient of calling the "severance" a penalty, especially when the contract itself represents that the "severance" payment "shall . . . not [be considered] a penalty or otherwise punitive payment." Penske Truck v. Chemetco, 725 N.E.2d 13, 19-20 (Ill. Ct. App. 2000).

4

Alternatively, Clark is entitled to at least $6.99 million as liquidated damages. Under Illinois law, which governs this case, a liquidated damages provision is to be upheld if (1) the amount fixed is reasonable in light of the anticipated or actual loss caused by the breach, and (2) at the time of contracting, the amount of anticipated loss is difficult to predict with reasonable certainty. Pav-Saver Corp. v. Vasso Corp., 493 N.E.2d 423, 427 (Ill. Ct. App. 1986). "The burden of proving that a liquidated damages clause is void as a penalty rests with the party resisting its enforcement." Id. Clark contends that LMC has not sustained this burden. I agree.

LMC emphasizes that Clark has suffered no damages whatsoever because when he took the job at Kemper Re he was retired and not actively pursuing other job opportunities. It also complains that an award of $6.99 million dollars or more would be an impermissible windfall because LMC gained no benefit from Clark's employment.

These arguments are unavailing. Clark agreed to return to work in the insurance industry on the understanding he would be able to reap the benefits of taking Kemper Re public through an IPO. He was not given that opportunity. Moreover, the record establishes that LMC signed its contract with Clark, notwithstanding its agreement to sell Kemper Re to GE, because it wanted his services in case the deal with GE fell through.

5

LMC's Counterclaim

Clark contends that he is entitled to summary judgment on LMC's counterclaim on the grounds that (1) he did not personally cause any premiums to be written; (2) the cap was never exceeded because all the premiums were ceded to another company before the end of the fiscal year; and (3) LMC has suffered no actual damages. However, the papers show that several factual issues remain in dispute. First, it is unclear precisely what Clark's duties were as CEO of Equus Re. He received memos from LMC directing him to stop the excessive premium writing, which suggests he had a responsibility as CEO to address the issue.[3] Second, the parties disagree as to the meaning of the cap, and the papers are not sufficient to permit a definitive determination. Finally, it is possible that the expense LMC incurred in purchasing reinsurance as a result of Equus Re's exceeding the cap, and its remaining liability exposure, may provide a basis for an award of damages.

C.   Other Claims

Summary judgment is granted with respect to the following undisputed claims:

1.   LMC's claim for repayment of excess salary payments in the amount of $229,885.10.

---

[3] At oral argument Clark claimed that he delegated the responsibility of putting in place a "retrocessional program," as Smith directed, to Lydia Kam, and that such a program was put in place. However, it is unclear whether the retrocessional program was adequate to address Smith's concerns, and whether Clark was responsible for assuring that the correct program was instituted.

6

2.    Clark's claim under section 12(f) of the contract for $6,266.35 in legal fees in connection with the negotiation and execution of the contract.

3.    Clark's claim under section 13 of the contract for $11,274.89 for reimbursement of legal fees incurred in connection with settlement negotiations with his former employer.[4]

Conclusion

Accordingly, both motions are granted in part and denied in part.

So ordered.

Dated at Hartford, Connecticut this 31st day of March 2004.

Robert N. Chatigny
United States District Judge

---

[4] Summary judgment is not granted on Clark's claim for reimbursement of reasonable attorney's fees he incurs in connection with this litigation. If Clark's recovery on the contract does not exceed $6.99 million, LMC will have a colorable argument that it should not be responsible for his attorney's fees.

7